**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**HAZIM FERHATOVIC,**

                                        **Plaintiff,**

            **vs.**                                        **6:14-CV-83**
                                                           **(MAD)**

**CAROLYN W. COLVIN,**

                                        **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**OFFICE OF PETER W. ANTONOWICZ**          **PETER W. ANTONOWICZ, ESQ.**
148 West Dominick Street
Rome, New York 13440
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**        **TOMASINA DIGRIGOLI, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**


### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff commenced this action on January 27, 2014, pursuant to 42 U.S.C. § 405(g),

seeking review of a decision by the Commissioner of Social Security denying Plaintiff's

application for Social Security Disability ("SSD") benefits. *See* Dkt. No. 1. On November 22,

2011, Plaintiff protectively filed an application for SSD, alleging a disability onset date of

November 21, 2008. Dkt. No. 10, Administrative Transcript ("T.") at 18. This application was

denied on July 26, 2011. *Id.* Plaintiff then requested a hearing and appeared with counsel before

Administrative Law Judge ("ALJ") Marie Greener on November 8, 2012. *Id.* On December 5,

2012, ALJ Greener issued a decision partially denying Plaintiff's claim. *See id.* at 18-27.

Plaintiff subsequently requested review by the Appeals Council and was denied such review on

January 15, 2015, making the ALJ's decision the final decision of the Commissioner for Social

Security. *See id.* at 1-3.

Presently before the Court is Plaintiff's motion to remand for further proceedings, and

Defendant's motion for judgment on the pleadings. *See* Dkt. Nos. 16, 17.

## II. BACKGROUND

### A.    Factual Background

At the time of the ALJ's decision, on December 5, 2012, Plaintiff was fifty years old, and

lived with his wife and children. T. at 40. Plaintiff alleged an initial disability onset date of

November 21, 2008. *Id.* at 37. However, the ALJ found that she had denied disability benefits to

Plaintiff previously, and determined the earliest possible onset date to be November 11, 2010. *Id.*

at 37-38.

Except for a six day period in May of 2012, Plaintiff has not worked since October of

2010. *Id.* at 40. During the six day period, Plaintiff "tried to work at Walmart, and [he] worked

for six days and had a problem with [his] back[,]" after which he quit, and has not worked since.

*Id.* The ALJ told Plaintiff she would "be willing to find him disabled as of May 1, 2012[,]" due to

a large herniated disc. *Id.* at 41. However, Plaintiff wished to argue for the earliest date possible,

due to the twenty-four  month waiting period mandated by Social Security before a disability

claimant can start to use Medicare health insurance. *Id.* at 43; *see also* 42 U.S.C. § 426(b). He

claimed that he "is supposed to have surgery on his back[,]" and without a disability onset date in

November of 2010, he would not be able to get the surgery. *Id.* at 42.

Plaintiff initially claimed that headaches, acid, and back problems prevented him from working after November 20, 2012. *Id.* at 46. However, Plaintiff partially withdrew this assertion, and stated that the acid did not keep him from working. *Id.* at 48-49. Further, Plaintiff confirmed that the headaches he complained of happened "only four times in a year and a half." *Id.* at 49. Finally, Plaintiff claims that his back problems were the reason he could not work from November 2010, to May 2012. *Id.* at 52-53. He further stated that he needed help dressing himself and using the bathroom intermittently due to these back pains. *Id.* at 54. When the ALJ asked why Plaintiff had not yet had back surgery, Plaintiff responded that "the treating physician who gave me injections gave me also pain killers and I'm using them, and they did schedule a surgery for January 16th, at 11:00 o'clock." *Id.* at 55.

**B.    Medical Background**

On January 14, 2011, Roger Breslow, M.D. ("Dr. Breslow"), completed a "Work Ability Report" for Plaintiff. *See id.* at 299. Dr. Breslow indicated that Plaintiff is out of work indefinitely, and he diagnosed Plaintiff with labrynthitis, dizziness, and depression. *Id.*

On March 8, 2011, Plaintiff presented to Benedetta Melnick, P.h.D. ("Dr. Melnick"). *See id.* at 344-45. Dr. Melnick noted that Plaintiff had recently visited his family in Bosnia, and he stated that "everything hurts." *Id.* at 344. Dr. Melnick opined that Plaintiff's diagnosis had not changed since his last visit, and he had a Global Assessment of Functioning ("GAF") score of 70. *Id.*

On March 26, 2011, Plaintiff presented to Maria B. Gesualdo, M.D. ("Dr. Gesualdo"). *See id.* at 346-49. Dr. Gesualdo diagnosed Plaintiff with "B/L pulmonary infiltrates," interstitial lung disease, mediastinal adenopathy, a cough, and dyspnea on exertion. *Id.* at 348. She also noted that Plaintiff traveled to Bosnia that year (2011). *Id.* at 346.

On March 31, 2011, Plaintiff presented to Lev Goldiner, M.D. ("Dr. Goldiner") for a general medical report. *See id.* at 296-98. Dr. Goldiner noted that Plaintiff "has been having frequent headaches 3-4 times a week with photophobia with aching and throbbing sensation 8/10 in intensity." *Id.* at 296. Dr. Goldiner opined that Plaintiff's assessed headache condition has deteriorated. *Id.* at 298.

On June 24, 2011, Plaintiff reported to Crouse Hospital emergency room due to "altered mental status." *See id.* at 479-94. According to the report, Plaintiff's case worker, who has since resigned his position (*see id.* at 188), described Plaintiff as a "'goldbricker' who does not want to work." *Id.* at 487. During the emergency room visit, Plaintiff said "[t]hat his only concern was receiving his disability money so he can pay his bills." *Id.* at 495. Further, when hospital staff told him they would not be giving him money, Plaintiff threatened to kill himself and his family. *Id.*

Due to this incident, Plaintiff was transferred to St. Joseph's Hospital, where he stated that the threats he made at Crouse were a misunderstanding. *Id.* at 510. Ahmad Bilal, M.D. ("Dr. Bilal") assessed plaintiff with an "adjustment disorder with depressed mood," and found that Plaintiff had a GAF of 55. *Id.* at 513.

On July 18, 2011, Plaintiff presented to Ibrahim Opaleye, M.D. ("Dr. Opaleye") for an internal medicine examination. *See id.* at 516-29. Dr. Opaleye diagnosed Plaintiff with a head injury, lower back pain with bone spurs in the back and hip, and hearing problems. *Id.* at 519. According to Dr. Opaleye's medical source statement, Plaintiff "has moderate limitation of bending, standing, lifting, carrying, walking, and sitting. Claimant should avoid heights and operating heavy machinery because of dizziness." *Id.* at 519.

On July 22, 2011, Dr. Breslow completed a second "Work Ability Report." *See id.* at 530. Dr. Breslow opined that Plaintiff "is out of work indefinitely and should be considered disabled." *Id.*

On July 26, 2011, Dr. Tzeto, a psychiatrist, completed a psychiatric review technique and a mental residual functional capacity ("RFC") assessment on Plaintiff. *See id.* at 533-46. Tzeto found that Plaintiff had moderate limitations in understanding and memory in two out of three categories, moderate limitations in sustained concentration and persistence in five out of eight categories, moderate limitations in social interaction in three out of five categories, and moderate limitations in adaptation in three out of four categories. *See id.* at 547-48. Further, Tzeto's psychiatric review technique determined that Plaintiff could perform low contact work. *Id.* at 545.

## III. DISCUSSION

**A.    Legal Standards**

*1. Five-step analysis*

For purposes of SSI, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(c)(3)(A). There is a five-step analysis for evaluating disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an

> impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citations omitted). The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step. *Id.*

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Record to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a de novo review."  *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### 2. Credibility determination

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  The regulations set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . .  If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. . . .  The ALJ must consider "[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] makes to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings."

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quotations and citations omitted).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including the following: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms.  20 C.F.R. § 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent

with an inability to perform all substantial activity, but whether the plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, *2 (Soc. Sec. Admin. July 2, 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record. *Id.* at *5.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, *inter alia*, 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891, *10 (E.D.N.Y. June 27, 2007). With regard to the sufficiency of credibility determinations, the Commissioner has stated that

> [i]t is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any

8

subsequent reviewers the weight the adjudicator gave to the
individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2.

**B.     The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since November 11, 2010.  T. at 20.  The ALJ further found that

Plaintiff's week at Walmart in May of 2012 did not "rise to the level of substantial gainful

activity."  *Id.*  At step two, the ALJ concluded that Plaintiff had the following severe impairments:

herniated discs of the lumbar spine, with, as of May 2012, nerve root impingement.  *Id.*  At the

third step of the analysis, the ALJ determined that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals the severity of any impairment listed

in 20 C.F.R. Part 404, Subpart P. Appendix 1.  *Id.* at 23.  The ALJ then found that prior to May 1,

2012, Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. §

404.1567(b).  *Id.*  Further, Plaintiff's mental RFC prior to May 1, 2012, allowed Plaintiff to work

"in a low stress environment, meaning routine daily tasks and duties which do not significantly

change in pace or location on a daily basis."  *Id.*  After May 1, 2012, the ALJ found that Plaintiff's

mental RFC did not change, but that Plaintiff could now "perform the full range of sedentary

work" as defined in 20 C.F.R. § 404.1567(a).  *Id.* at 25.  At step four, the ALJ found that Plaintiff

has been unable to perform any past relevant work since November 11, 2010.  *Id.*  At the fifth and

final step of the analysis, relying on the Medical-Vocational Guidelines, 20 C.F.R. Part 404,

Subpart P, Appendix 2, the ALJ found that jobs existed in significant numbers that Plaintiff could

have performed prior to May 1, 2012.  *Id.* at 26.  Therefore, prior to May 1, 2012, the ALJ made a

determination that Plaintiff was not disabled, as defined by the Social Security Act.  *Id.*  However,

beginning on May 1, 2012, and relying on Medical-Vocational Rule 201.09, Table No. 1, the ALJ

found that no jobs exist in significant numbers in the national economy that Plaintiff can perform. *Id.* at 26-27.  Therefore, Plaintiff "became disabled on [May 1, 2012,] and has continued to be disabled through" December 5, 2012**.** *Id.* at 27.  Based on her ruling, the ALJ determined that Plaintiff was entitled to receive disability benefits beginning on May 1, 2012.  *Id.*

**C.      Analysis**

*1. The ALJ's credibility determination was proper*

Plaintiff makes numerous arguments regarding the ALJ's credibility determination.  In his statement of the case, Plaintiff argues that the May 1, 2012 date was arbitrary, and that the ALJ improperly found contradicting testimony where Plaintiff referenced an upcoming surgery.  Dkt. No. 16 at 4-5.  Plaintiff further argues that the ALJ improperly found contradicting testimony because the doctor did in fact discuss surgery as an option with him.  *Id.*  Plaintiff then alleges that "[t]he ALJ's assessment of the plaintiff's credibility was clearly impacted by the difficulties with translation." *Id.* at 12.  Plaintiff provides no  support for this assertion.  Plaintiff next argues that "[t]he ALJ should have given [Plaintiff's] allegations of pain proper weight and applied the criteria set forth in Social Security Rulings 83-14, 96-4p. and 96-7p." *Id.*  Plaintiff further contends that the ALJ did not assess his credibility in accordance with 20 C.F.R. § 404.1528, SSR 96-3p, and SSR 96-7p.  *Id.* at 13.  Finally, Plaintiff argues that if the ALJ had applied the "seven factors to examine the evidentiary record, the plaintiff's allegations of disabling non-exertional symptoms" would be more credible than the ALJ determined.  *Id.* at 14.

In response, Defendant argues that Plaintiff failed to show that he was disabled prior to May 2012.  Dkt. No. 17 at 8.  Next, Defendant contends that "MRIs and CT scans showed an exacerbation of plaintiff's back condition in May 2012[,]" and argues that this, coupled with Plaintiff's "own statements to his physicians, that his condition worsened in May 2012[,]" showed

that the ALJ relied on substantial evidence to find the disability onset date. *Id.* at 9. In regard to the ALJ's further credibility determinations, Defendant states that subjective "complaints, alone, cannot be the basis for finding a disability." *Id.* (citation omitted). Finally, Defendant argues that the ALJ provided a careful and thoughtful analysis of Plaintiff's credibility. *Id.* In the course of this analysis, Defendant argues that the ALJ gave Plaintiff the benefit of the doubt, but "rightly observed that some evidence of record undermined Plaintiff's credibility." *Id.* According to Defendant, the evidence that undermined Plaintiff's credibility is (1) the June 2011 emergency room visit where Plaintiff indicated "that he was 'fine' but wanted Social Security disability payments[,]" and (2) Plaintiff's trip to Bosnia in 2011 "despite claims of significant issues with sitting and mobility . . . ." *Id.* at 10.

While Plaintiff claims that the May 1, 2012, disability onset date is arbitrary, the ALJ's decision stated that this determination is supported by "objective evidence from an MRI" and coincides with complaints of increased symptoms. T. at 24. Further, Plaintiff claims that the ALJ pointed "to what she considers to have been evasive testimony" in reaching this decision, but the record does not support this conclusion. Dkt. No. 16 at 4. In fact, the decision points to complaints of increased symptoms around this time, and the ALJ found that the objective evidence available supported Plaintiff's subjective symptoms after May 1, 2012. T. at 24. As the ALJ pointed to specific evidence to support a disability onset date of May 1, 2012, her decision was not arbitrary.

Plaintiff's argument regarding the ALJ's determination that there was contradicting testimony regarding surgery does not present all the facts to the Court. While it is true that the ALJ found Plaintiff's testimony contradictory, this determination was not based solely on the portion of the decision cited by Plaintiff. The decision goes on to say "[a] review of the medical

evidence, which has been updated to at least October 1, 2012, shows no indication of surgery having been scheduled. . . .  Dr. Soults had suggested surgery would be an option if additional conservative treatment failed (Exhibit B24F)."  T. at 24.  The record of Plaintiff's testimony further shows that Plaintiff cited an exact date and time when the surgery was to take place.  *Id.* at 55.  Based on a complete recitation of the record, it is clear that the ALJ found Plaintiff's testimony unreliable because Plaintiff represented that his upcoming surgery was scheduled, when no appointment was actually in place.

Plaintiff next alleges that "[a] suggestion that plaintiff is being evasive when an interpreter is being employed is highly suspect without sufficient inquiry."  Dkt. No. 16 at 5.  No support is provided for this assertion.  "A qualified interpreter must '[p]rovide [] an accurate interpretation of questions and responses by both the individual being interviewed and the DDS staff member." *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 29, 31 (2d Cir. 2013).  Further, where a translator is used, courts have ordered a case remanded when an adjudicator claimed that the plaintiff's "evasiveness 'cast a flavor over the entire hearing.'" *Guanghua Zhou v. Gonzales*, 193 Fed. Appx. 98, 99 (2d Cir. 2006) (citation omitted).     In the current case, the record does not show that the ALJ mischaracterized Plaintiff's testimony.  In regard to the ALJ's perception of Plaintiff's testimony, *Guanghua Zhou* requires that any mischaracterization "cast a flavor over the entire hearing." *Id.* at 99.  The record shows that the ALJ did not let her perception of Plaintiff's evasiveness influence the entire hearing.  While the ALJ did not allow the interpreter to rephrase Plaintiff's attorney's question on one occasion, she allowed the attorney to continue the same line of questioning by posing the question over again.  T. at 49.  The record shows no indication that Plaintiff's perceived evasiveness effected the remainder of the hearing, because the ALJ allowed Plaintiff's attorney to complete his questioning, and then asked more questions of her own before

adjourning the hearing. *Id.* at 49-57. The ALJ's further questioning does not show that she considered Plaintiff's remaining testimony not credible, unlike the adjudicator's statement in *Guanghua Zhou* that the plaintiff's evasiveness tainted the entire hearing. *Guaghua Zhou*, 193 Fed. Appx. at 99.

However, assuming that the record did show that the ALJ allowed her perceptions to color the hearing, three of the four determinations that Plaintiff was evasive cannot plausibly be considered mischaracterizations of his testimony. Instances where the ALJ found evasiveness included her questions regarding Plaintiff's back surgery, her questions regarding the symptoms of his low back pain, his testimony that "he could sit upright for 1 hour and 15 minutes before he would start shaking and have to take medication[,]" and his use of a walker. T. at 23-24.

In *Pronti v. Barnhart*, the court held that the ALJ mischaracterized testimony because he believed the plaintiff could not have completed GED testing without sitting continuously for five or six hours, when the plaintiff's testimony clearly stated that he was able to complete the testing by sitting in fifteen minute intervals. *Pronti v. Barnhart*, 339 F. Supp. 2d 480, 489 (W.D.N.Y. 2004). First, the ALJ's decision regarding the surgery was not a mischaracterization, because Plaintiff testified to a non-existent event. Second, the decision related to Plaintiff's low back pain does not amount to a mischaracterization. The ALJ found that "[w]hen asked what his low back symptoms were after he received several epidural injections which had not helped, he could not provide an answer." T. at 24. A review of the record shows that Plaintiff's response only indicated that he initially had spinal pain, and after receiving injections for the pain, he "wasn't feeling fine to go back to work, but . . . it wasn't a horrible pain." *Id.* at 50. When Plaintiff did specify where the pain occurred, he focused on his leg rather than his back. *Id.* Unlike *Pronti*, the ALJ did not overlook evidence that detailed Plaintiff's low back symptoms, and therefore her

finding is not a mischaracterization. Third, the ALJ discounted Plaintiff's testimony about his "extreme limitation on sitting" because "the medical evidence of record [] does not support" the symptom. *Id.* at 24. Relying on objective medical evidence is not a mischaracterization. Fourth, Plaintiff testified that "he had used a walker all the time in the last 4 years[,]" but the ALJ found that "the medical evidence indicates that the claimant's use of a cane was more frequent than his use of [the] walker . . . ." *Id.* However, the ALJ did not question Plaintiff about the possibility that he used a cane rather than a walker at times and the ALJ did not ask whether Plaintiff knew the difference between a cane and a walker. Accordingly, it is possible that this finding was a mischaracterization of Plaintiff's testimony. However, since it is the only mischaracterization within the record, all other testimony relied upon by the ALJ constitutes "viable alternative ground[s]" for her decision. *Guanghua Zhou*, 193 Fed. Appx. at 101; *Tankisi*, 521 Fed. Appx. at 31-32. Therefore, the Court finds that this single mischaracterization is not sufficient to support a holding that the ALJ's credibility determination was flawed.

While Plaintiff alleges that the ALJ did not apply a number of Social Security Rulings when determining Plaintiff's credibility, the essence of his argument is that the ALJ should have considered the seven factors listed in 20 C.F.R. § 404.1529 when assessing Plaintiff's testimony and subjective symptoms. In *Cichocki v. Astrue*, the court found that "[w]hile the ALJ did not discuss all seven factors listed in 20 C.F.R. § 416.929(c)(3), he provided specific reasons for his credibility determination." *Cichocki v. Astrue*, 534 Fed. Appx. 71, 76 (2d Cir. 2013). The *Cichocki* court further held that "[b]ecause the ALJ thoroughly explained his credibility determination and the record evidence permits us to glean the rationale of the ALJ's decision, the ALJ's failure to discuss those factors not relevant to his credibility determination" does not render the decision susceptible to remand. *Id.*

Contrary to Plaintiff's arguments, the ALJ provided specific reasons for her finding on credibility, which were supported by evidence in the case record. The ALJ provided specific reasons for her holding, including the June 2011 emergency room visit, and Plaintiff's testimony, which she determined was not credible.[1] T. at 24. The ALJ thoroughly discussed Plaintiff's testimony regarding his low back pain and his consultations with Dr. Soults. *Id.* at 23-25. Throughout her decision, the ALJ discussed evaluations performed by several doctors and thoroughly supported her credibility determinations with the objective medical evidence. *Id.* After reviewing the ALJ's decision and the record, the Court holds that the ALJ's failure to discuss the seven factors is not reversible error, because the ALJ provided "specific reasons for [her] credibility determination." *Cichocki*, 534 Fed. Appx. at 76.

Based on the foregoing, the Court holds that the ALJ properly assessed Plaintiff's credibility.

### 2. The ALJ failed to properly assess the medical opinion evidence

Plaintiff next argues that it "was an error of law for the ALJ to not accord sufficient weight to the office notes of [the treating physician] and for the ALJ to fail to recognize that the limitations expressed in the June 2012 report were present from the onset of treatment with" the treating physician. Dkt. No. 16 at 16. Plaintiff further makes the conclusory statement that "[t]he plaintiff has been disabled since November 11, 2010." *Id.* Finally, Plaintiff alleges that the "ALJ erred in substituting her judgment for that of treating medical doctors when she discounted the

---

[1] While the ALJ does not evaluate it in making her credibility determination, the Court notes James Buswell's note to the ALJ. *See* T. at 203-04. Mr. Buswell claims that Plaintiff told him that he "needed SSI so that he could develop and further his singing career," and that Plaintiff frequently drives himself to a local coffee shop with no cane or walker. *Id.* at 203. The ALJ declined to find that Plaintiff engaged in fraudulent behavior, because "the objective medical evidence of record does show a significant lumbar spine impairment." *Id.* at 27.

plaintiff's allegations of pain and the physician's opinions regarding the length of time that the plaintiff has [been] severely limited in activities." *Id.* at 15-16. Plaintiff claims that the treating physician's opinions are well supported, but he fails to direct the Court to any supporting evidence through citations to the record. Dkt. No. 16 at 16.

Defendant claims that the "ALJ properly gave little weight to [the treating physician's] statements that plaintiff could not work because such opinions relate to an issue reserved to the Commissioner." Dkt. No. 17 at 7-8 (citation omitted). Further, Defendant notes that it is the responsibility of the claimant to show that they suffer from a disability, and "plaintiff fail[ed] to show any evidence that he became disabled prior to May 2012." *Id.* at 8.

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion is contradicted by other substantial evidence in the record, such as the opinions of other medical experts. *See Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). " Although the final responsibility for deciding issues relating to disability is reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(e)(1), an ALJ must give controlling weight to a treating physician's opinion on the nature and severity of the claimant's impairment when the opinion is well-supported by medical findings and not inconsistent with other substantial evidence." *Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009) (other citation omitted).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to

the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c).

Although the ALJ need not explicitly consider each of the factors listed in 20 C.F.R. § 404.1527(c), it must be clear from the ALJ's decision that a proper analysis was undertaken. *See Petrie v. Astrue*, 412 Fed. Appx. 401, 406 (2d Cir. 2011) ("[W]here 'the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability'") (quotation omitted); *Hudson v. Colvin*, No. 5:12-CV-0044, 2013 WL 1500199, *10 n.25 (N.D.N.Y. Mar. 21, 2013) ("While [the ALJ] could have discussed the factors listed in the regulations in more detail, this does not amount to reversible error because the rationale for his decision is clear and his ultimate determination is supported by substantial evidence"), *report and recommendation adopted*, 2013 WL 1499956 (N.D.N.Y. Apr. 10, 2013). Failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Sanders v. Comm'r of Soc. Sec.*, 506 Fed. Appx. 74, 77 (2d Cir. 2012) (citations omitted).

In the present matter, the ALJ provided her reasoning for giving little weight to the medical opinion evidence as follows:

> Although he is a long-time treating physician, I have given little weight to Dr. Breslow's opinions because the clinical findings of record do not support his extremely limiting detailed assessment. If taken literally, Dr. Breslow's opinion would mean the claimant would require almost constant care, which is clearly not the case herein. I have given limited weight to Dr. Opaleye's opinion to the extent that it indicates the claimant can perform [] at least a range of light work. However, the medical evidence does not support a finding that the claimant can sit for only 3 hours in an 8 hour workday. Dr. Opaleye's opinion was rendered prior to the additional MRI findings of May 2012.

T. at 25.  The ALJ acknowledges that Plaintiff's doctor is "a long-time treating physician," and states that the medical evidence does not support Dr. Opaleye's or Dr. Breslow's opinion.  *Id.*  In addition to citations throughout her decision to the evidence in the record, the ALJ also discussed her prior disability decision for Plaintiff, because according to the ALJ, her prior decision "continues to have some resonance for the period [of] November 11 through April 30, 2012."  *Id.*

### a. Dr. Breslow's opinion

Although Plaintiff contends that the ALJ erred in not giving controlling weight to Dr. Breslow's opinion, the Court finds that the ALJ's decision is supported by substantial evidence and sufficiently explained.  *See* Dkt. No. 16 at 15-16.  First, throughout her decision, the ALJ cited to relevant medical evidence that clearly undermined Dr. Breslow's opinion that Plaintiff was disabled prior to May 2012.  As Plaintiff admitted that back pain was his only disabling injury during his hearing, Dr. Breslow's treatment notes should support his allegations of disabling back pain.  T. at 50-51.  However, this is not the case.  In half of Dr. Breslow's notes predating May 2012, no mention is made of Plaintiff's alleged debilitating back pain.  Rather, Plaintiff reported other medical issues.  *See id.* at 300, 314, 334, 339, 341, 357, 363, 369, 375, 377, 383, 387, 389, 391, 393, 397, 399, 403, 405, 407, 417, 419, 420, 421, 422, 429, 431, 435, 473.

Further, although Dr. Breslow occasionally stated his belief that Plaintiff was disabled and unable to work, he provides no reason consistent with back pain for this belief in his notes.  For example, in a January 14, 2011 office visit, Dr. Breslow indicates that Plaintiff "is in no distress."  *Id.* at 365.  Then, without any explanation for his assessment, Dr. Breslow states "I do think he is disabled right now and he cannot work though."  *Id.*  On the same day, Dr. Breslow noted that Plaintiff "is out of work [indefinitely,]" but cited labrynthitis, dizziness, and depression as the

reasons for Plaintiff's disability, rather than any problem with Plaintiff's back. *Id.* at 299. Further, on at least one occasion Plaintiff denied back pain altogether. *Id.* at 683.

During an office visit on December 29, 2010, during which Plaintiff reported that he had coughed up blood earlier in the day, Dr. Breslow again noted that Plaintiff "appears in no distress." *Id.* at 367. During an October 15, 2010 follow-up visit, Dr. Breslow noted that Plaintiff may be depressed and that he occasionally has shortness of breath and chest pain when climbing the stairs. *See id.* at 369.

On July 16, 2010, Plaintiff had a follow-up visit regarding his lumbar radiculitis. *See id.* at 323. Dr. Breslow indicates that Plaintiff allegedly has pain "in the right lower part of his back going down the right leg" but notes that, "[i]nterestingly he has more of an ankle jerk reflex on the right than the left." *Id.* On September 1, 2010, Dr. Breslow's examination notes read as follows: "He is in because of back pain. It is over the lower lumbar spine. It goes down the right leg. We note knee jerk reflex is symmetrical. I did not get an ankle jerk on either side. [N]othing much to see in the back." *Id.* at 371. Dr. Breslow prescribed physical therapy and refilled Plaintiff's prescription for Lortab. *See id.*

Additionally, the ALJ discussed an MRI of Plaintiff's lumbar spine from 2007 which showed "the worse" findings at L4-L5 and indicated only mild spinal canal stenosis and mild to moderate narrowing of the bilateral neural foramina. *See id.* at 23, 449.

Accordingly, Plaintiff's treatment records contradict Dr. Breslow's conclusory comments regarding Plaintiff's inability to work. Therefore, the ALJ did not commit error by discounting Dr. Breslow's opinion when she found Plaintiff was not disabled before May of 2012.

Based on the foregoing, the Court finds that the ALJ appropriately discounted Dr. Breslow's opinion because it was not consistent with his treatment records prior to May of 2012.

### b. Dr. Opaleye

The ALJ chose "to give limited weight to Dr. Opaleye's opinion to the extent that it indicates the claimant can perform [] at least a range of light work." T. at 25. She stated that "the medical evidence does not support a finding that the claimant can sit for only [three] hours in an [eight] hour workday." *Id.* "Where controlling weight is not given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a State agency medical consultant is legal error." *Bishop v. Colvin*, No. 3:13-cv-1438, 2015 WL 792050, *6 (N.D.N.Y. Feb. 25, 2015); *see* 20 C.F.R. § 404.1527(c), (e). However, "there is no [] requirement to provide good reasons for the weight afforded to a non-treating physician's opinion." *Fabian v. Colvin*, No. 5:13-cv-1063, 2015 WL 792065, *7 (N.D.N.Y. Feb. 25, 2015) (citation omitted). Accordingly, the ALJ's explanation for giving Dr. Opaleye's opinion limited weight is not legal error. The ALJ explained that "the medical evidence does not support a finding that the claimant can sit for only" three hours during an eight hour workday, and she discussed this evidence throughout her decision. Moreover, "[l]ight work requires the ability to . . . stand and walk for up to 6 hours a day, and sit for up to two hours." *Mancuso v. Astrue*, 361 Fed. Appx. 176, 178 (2d Cir. 2010). Therefore, even if Dr. Opaleye's opinion had been given significant weight, it would not have changed the ALJ's RFC determination.

### 3. Use of a vocational expert

According to Plaintiff, "the Commissioner must introduce the testimony of a vocational expert" if "Plaintiff's non-exertional impairment significantly diminishes the ability to perform the full range of employment . . . ." Dkt. No. 16 at 17. Plaintiff alleges that because the "ALJ found 'marked difficulties in social functioning', a vocational expert should have been called." *Id.*

The Defendant claims that because "the ALJ found that plaintiff could perform routine daily tasks and duties that do not significantly change in pace or location on a daily basis, . . . [t]hese non-exertional limitations do not significantly impact upon plaintiff's light occupational base." Dkt. No. 17 at 11.

According to the Second Circuit:

> If a claimant has nonexertional limitations that "significantly limit the range of work permitted by his exertional limitations," the ALJ is required to consult with a vocational expert. *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986) (internal quotation marks omitted) (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir.1983)). However, the "mere existence of a nonexertional impairment does not automatically . . . preclude reliance on the guidelines." *Id.* at 603. A nonexertional impairment "significantly limit[s]" a claimant's range of work when it causes an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.* at 605–06.

*Zabala v. Astrue*, 595 F.3d 402, 410-11 (2d Cir. 2010).

In *Zabala*, the Second Circuit referenced the relevant ALJ order, which found that the plaintiff's nonexertional limitations "did not limit her ability to perform unskilled work, including carrying out simple instructions, dealing with work changes, and responding to supervision." *Id.* at 411. Relying on the ALJ's opinion, the Circuit held that "the ALJ's use of the Medical-Vocational Guidelines was permissible." *Id.*

In the current case, the ALJ found that the evidence of record, which included "GAF scores above 71[2] for most of the period since November 2010 and [Plaintiff's] documented ability to

---

[2] The plaintiff in *Zabala* had a GAF score of 65. *Zabala*, 595 F.3d at 407. A GAF of 61 to 70 reflects "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. rev.2000) ("DSM–IV"). A GAF of 71 to

(continued...)

interact appropriately with others" supported an RFC allowing low stress work. *See* T. at 21, 26.

The ALJ provided similar justification to *Zabala*, specifically that Plaintiff could interact

appropriately with others, and further, Plaintiff's GAF score puts him in a lower risk category than

the plaintiff in *Zabala*. *Id.* at 26. The ALJ made this determination upon considering Plaintiff's

age, education, and work experience. *Id.* Therefore, the Court finds that the ALJ's use of the

Medical-Vocational Guidelines to determine whether Plaintiff could perform jobs in the national

economy prior to May 2012 was proper.

Based on the foregoing, the Court denies Plaintiff's motion.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to remand for further proceedings (Dkt. No. 16) is

**DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is

**GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close

this case; and the Court further

---

[2](...continued)
80 means that, "if symptoms are present, they are transient and expectable reactions to
psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight
impairment in social, occupational, or school functioning." *Id.*

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 25, 2015
     Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge